UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HOLLIS BOUTAIN and                          CIVIL ACTION NO.: 11-1907
EDNA FAYE BOUTAIN

       Plaintiffs

                                  SECTION:

                                  JUDGE:
                                  MAGISTRATE:

       VS.
RADIATOR SPECIALTY COMPANY
CHEVRON USA, INC. as successor to Gulf,
Oil Corp., EXXONMOBIL OIL CORP.,
OIL INSURANCE LTD., AND
INSCO, LTD.

       Defendants

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**Plaintiffs' Original Complaint**

The plaintiffs, **Hollis Boutain and Edna Faye Boutain** through their attorneys, file this

Complaint as follows:

**Parties**

1.

A.    *The Plaintiffs*

The plaintiffs are:

    i.    **Hollis Boutain,** a major domiciled in, Tangipahoa Parish, Louisiana;

    ii.    **Edna Faye Boutain,** a major domiciled in, Tangipahoa Parish, Louisiana;

B.    *The Defendants*

The defendants are:

i.     **Radiator Specialty Company**, a North Carolina corporation, with it's principal business office in North Carolina, and whose mailing address is 1900 Wilkinson Boulevard., Charlotte, North Carolina 28208.

ii.    **Chevron USA, Inc. as successor in interest to Gulf Oil Corporation (hereinafter "Gulf Oil"),** a Pennsylvania corporation, authorized to do  and doing business in Louisiana, with its principal business office in California, and whose agent for service of process is The Prentice-Hall Corporation, 320 Somerulos St., Baton Rouge, Louisiana 70802;

iii.   **ExxonMobil Oil Corp. individually as successor to Exxon Co. and doing business as Esso (herein after "Exxon"),** a New Jersey Corporation, authorized to do business in Louisiana, with its principal business office in Irving, Texas, and whose agent for service of process is  Corporation Service Co. 320 Somerulos St., Baton Rouge, LA 70802.

iv.     **Oil Insurance Limited (OIL)**, a foreign company licensed to do business in the State of Louisiana, and who was at all pertinent times and insurance provider for **Gulf Oil Corporation** and the **Executive Officers** *of Gulf Oil Corporation's Alliance Refinery between* **1970** and **1976:**

      a. **Dick Bruno, Safety Manager at the Alliance Refinery from 1972 to 1976, deceased.**

      b. **Jack Drew a Process   Supervisor at the Alliance refinery from 1972 to 1976, deceased.**

      c. **Hank Vernkaul, the Plant Director of Operations between 1972-1976, deceased.**

    d. **Dave Hoyer, a Plant Manager at the Alliance refiner from 1972 to 1974, deceased.**

    e. **Charlie Nelson, a Plant Manager at the alliance refinery between 1972 and 1976, deceased.**

    f. **Boutain Becker a Plant Manager in 1976.**

    v.    **Insco, LTD**., a foreign company licensed to do business in the State of Louisiana, and who was at all pertinent times and insurance provider for Gulf Oil Corporation and its executive officers (as listed above).

**Jurisdiction and Venue**

2.

This Court has jurisdiction under 28 U.S.C. §1332. There is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.

This Court has personal jurisdiction over the defendants who are doing business in the district or who did business in this district at a relevant time.

4.

Defendants are incorporated under the laws of North Carolina, New Jersey, Bermuda, and Pennsylvania, with their principal places of business in North Carolina, Pennsylvania, Texas, Bermuda and California. Plaintiffs are domiciled in Tangipahoa Parish, Louisiana. None of the Defendants are domiciled in Louisiana. Therefore, there is complete diversity in this matter.

5.

Venue is proper in this district under 28 U.S.C. § 1391 (b)-(c) because the defendants are doing business in this district and because the events giving rise to the plaintiffs' causes of action arose in this district (Plaquemines Parish). This Court also has venue because the petitioners are residents of Tangipahoa Parish and the deceased Gulf Oil Executive Officers, **Dick Bruno, Safety Manager at the Alliance Refinery from 1972 to 1976 (deceased); Jack Drew a Process Supervisor at the Alliance refinery from 1972 to 1976 (deceased); Hank Vernkaul, the Plant Director of Operations between 1972- 1976 (deceased); Dave Hoyer, a Plant Manager at the Alliance refinery from 1972 to 1974 (deceased);  Charlie Nelson, a Plant Manager at the alliance refinery between 1972 and 1976 (deceased); and Boutain Becker a Plant Manager in 1976 (Deceased)** resided in Plaquemines Parish at the time of their deaths. Moreover, the acts, omission, occurrences and injuries at issue occurred and the damages were sustained in Plaquemines and Jefferson Parishes.

## Background

### 6.

Hollis Boutain ("Mr. Boutain") began working at the Alliance Refinery in Belle Chasse, Louisiana during its construction in 1970.  He continued working for Gulf Oil Corporation at the Alliance refinery until 1977.   While working at the refinery Mr. Boutain worked with pure benzene, naphtha, xylene and toluene.  As part of his job duties he regularly sampled and tested products,  did 'turnarounds' and went inside vessels with Benzene, Toluene and Xylene (BTX) and Naphtha.  "Turn Around" is the process of getting a unit repaired and ready for an extended process run, it involved drawing off all hydro-carbon liquid from the unit, steaming the unit, ventilating the unit to the atmosphere, and repairs to the unit.   Mr. Boutain worked on the

following process units:  Naphtha Firing unit, Cat Reforming Unit, Aromatic Extraction Unit, Thermal Dealkyuation Unit, Jet Fuel Production Unit.

7.

Hollis Boutain ("Mr. Boutain") regularly used Benzene, Toluene and Xylene (BTX) and Naphtha while working for Gulf Oil Corp. at the Alliance Refinery from 1970 to 1976.

8.

Mr. Boutain used Liquid Wrench, produced by Radiator Specialty Co., from 1970 through 1978 while performing home maintenance work.  From 1970 to 1978 he also used Liquid Wrench at work, to free up seized nuts & bolts, and performed other minor maintenance work. Liquid Wrench contained up to 30% benzene.  Mr. Boutain was exposed to benzene in Liquid Wrench from 1970 to 1978.

9.

Mr. Boutain was exposed to benzene in gasoline and Varsol, on a daily basis, while working at the Esso Gas Station near the junction of Huey P. Long and the Westbank Expressway in Louisiana between 1968 and 1970.

10.

Mr. Boutain pumped gasoline, washed his hands in gasoline and Varsol, and used Varsol in the parts washer while working at the Esso Gas Station between 1968 and 1970.  The Esso Station where Mr. Boutain worked received its gasoline, and supplies from Exxon.

11.

The products Mr. Boutain used at the Alliance Refinery, Esso Service Station and at home, were manufactured, supplied, distributed and sold by defendants, Radiator Specialty Company, ExxonMobil Oil Corp. (including its predecessors), and Gulf Oil Corporation, the

predecessor of Chevron U.S.A.

12.

In September of 2010, Mr. Boutain was diagnosed with CLL Leukemia (Chronic Lymphocytic Leukemia) as a result of his exposure to benzene

13.

At all material times herein, defendants, Gulf Oil corporation, ExxonMobil, and Radiator Specialty Company were manufacturers, distributors, sellers and, suppliers, of benzene or benzene-containing products.

14.

Petitioner was exposed to significant quantities of benzene and/or benzene containing products as a result of the acts or omissions of the deceased Gulf Oil Executive Officers, **Dick Bruno- Safety Manager at the Alliance Refinery from 1972 to 1976, Jack Drew- Process Supervisor at the Alliance refinery from 1972 to 1976, Hank Vernkaul - Plant Director of Operations between 1972- 1976, Dave Hoyer- Plant Manager at the Alliance refinery  from 1972 to 1974, Charlie Nelson - Plant Manager at the Alliance refinery between 1972 and 1976,  and Boutain Becker - Plant Manager in 1976.** This exposure was a substantial contributing cause in Mr. Boutain's development of CLL

15.

The deceased Gulf Oil Executive Officers, **Dick Bruno, Jack, Hank Vernkaul, Dave Hoyer, Charlie Nelson, and Boutain Becker** resided in the Parish of Plaquemines, State of Louisiana prior to and at the time of their deaths. Oil Ins. Ltd., and Insco, Ltd. can be pursued directly for the acts and omissions of these deceased Gulf Oil Executive Officers.

16.

While working at the locations described above, petitioner was exposed to dangerously high levels of benzene and other products containing benzene which were unreasonably dangerous materials.

17.

While working at the Alliance Refinery from 1970-1978, Mr. Boutain was exposed daily to high levels of benzene when he performed assigned tasks. He was exposed to high levels of benzene from products manufactured, distributed or sold by the Defendants.

18.

Mr. Boutain sustained tissue damage from each exposure to benzene, resulting in distinct bodily injuries in every year from 1970 through 1978.

19.

As a direct and proximate result of exposure to benzene and products containing high levels of benzene, Mr. Boutain suffered injury including, but not limited to, CLL physical damage, severe physical and mental pain, fear of further disease processes, disability, medical expenses, and loss of enjoyment of life.

20.

The causal connection between Mr. Boutain's injuries and benzene has been scientifically documented since 1948.

21.

The development of CLL as a result of chronic benzene exposure has been well documented, and death resulting from CLLa has been associated with benzene exposure.

22.

CLL is a malignant disease that affects the blood and bone marrow.

23.

Scientists have also linked Multiple myeloma, myelodysplastic syndrome (MDS), aplastic anemia, pancytopenia, cytopenias, myelofibrosis, and polycythemia vera to benzene exposure.

24.

The latency period for the development of injuries after benzene exposure has been known to range from less than 5 years to in excess of 50 years.

25.

Practically all of the adverse chronic effects of exposure to benzene and its oxidation products are a result of their influence on the blood forming system.

26.

The health hazards of benzene have been recognized for over one hundred years. Benzene has been recognized as a carcinogen known to cause leukemia. By the end of 1948, it was widely known to those in defendants' industry in the United States, as well as the named Defendants and their predecessors, that exposure to benzene could cause a myriad of ill health effects including such diseases as leukemia, multiple myeloma, lymphoma and other blood disorders.

27.

Through industry and medical studies unknown to plaintiffs, the Defendants knew or should have known of the health hazards inherent in the products they manufactured, distributed, sold, supplied, owned, transported, or used. The actions or inactions of the defendants constitute gross negligence and demonstrate a reckless disregard for the rights and safety of others.

Furthermore, the defendants committed numerous tortious acts that include, without limitation, negligently misrepresenting, concealing, suppressing, omitting material information about the health effects of benzene and failing to inform users of precautionary measures to be used when handling or near benzene, as specifically alleged below.

28.

Exposure to benzene occurs through inhalation and skin contact. Chronic benzene poisoning results from repeated or continuous exposure to relatively low concentrations of benzene vapors.

29.

Long-term benzene exposure may adversely impact marrow and bone production. Breathing benzene can cause drowsiness, dizziness, rapid heart rate, headaches, tremors, confusion, and unconsciousness. Breathing very high levels of benzene can also result in death. Eating or drinking foods containing high levels of benzene can cause vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death.

30.

In the September 1948 Edition of the American Petroleum Institute, _Toxicological Review Benzene_, the authors recommended precautionary measures for workers who are exposed to benzene. Furthermore, the review stated that benzene use was extensive in the petroleum industry, with the greatest amount of benzene blended into gasoline

31.

As of 1948, the American Standards Association and most states had set an arbitrary limit of 100 ppm as the maximum permissible benzene concentration for workers exposed to this substance during an 8-hour day. In 1948, the American Petroleum Institute reported that "In as

much as, the body develops no tolerance to benzene, and as there is a wide variation to individual susceptibility, it is generally considered that the only absolute safe concentration for benzene is zero." *Id.* at API 1948.   The concentration of benzene vapor in the air should be checked regularly in situations where excessive exposures are apt to be encountered. *Id.*

32.

The safety measures necessary for the prevention of benzene poisoning are primarily those designed to prevent the inhalation of benzene vapor. Ventilation should be designed to prevent toxic concentrations of the vapor from reaching the breathing zone of individuals who may potentially be exposed. Individuals who must be exposed to benzene vapor should be rotated to reduce their exposure time to a minimum. When excessive concentrations are unavoidably encountered in operations—such as the cleaning of tank cars, vats, storage tanks—a supplied air respirator or self-contained breathing apparatus with full face shield should be employed. Skin contact and possible dermatitis from benzene should be avoided entirely if possible; but, if the hands must contact the solvent, then neoprene gloves or protective creams should be used. *Id.*

33.

The Defendants knew or should have known about the causal relationship between benzene and cancer-related illnesses. The Defendants failed to warn Mr. Boutain and other similarly situated workers about the health hazards associated with benzene.

34.

The Defendants have committed negligence, gross-negligence and are strictly liable for the damages caused by their products  Defendants are at fault for Mr. Boutain's injuries as outlined in this complaint.

## Liability Of The Gulf Oil Executive Officers

35.

The exposure of Mr. Boutain to benzene and benzene containing products as a result of the acts or omissions of the Gulf Oil Executive Officers, **Dick Bruno, Jack Drew, Hank Vernkaul, Dave Hoyer, Charlie Nelson, and Boutain Becker,** were a substantial contributing cause in development of his CLL. The Gulf Oil Executive Officers had the responsibility for protecting the health and safety of the employees of Gulf Oil including the named plaintiff.

36.

When Mr. Boutain inhaled or otherwise ingested, these dangerous and toxic substances including but  not limited to benzene and benzene containing products it caused irreparable harm and progressive damage to the blood and blood forming organs, including leukemia.

37.

The Gulf Oil Executive Officers had the responsibility to provide plaintiff with a safe place to work and safe means and equipment with which to perform his work. They negligently failed to discharge said responsibility. These Executive Officers were negligent in the following, non-exclusive particulars:

a.     by not requiring petitioners to wear the proper respiratory protective equipment when working with benzene and benzene containing products;

b.     by failing to make available to the petitioners proper respiratory protective equipment for use when petitioner was in a benzene contaminated work environment;

c.     by failing to warn or inform petitioner regarding the health hazards involved in the inhalation of benzene and benzene containing products;

d.      by failing to implement the proper engineering controls, including providing adequate ventilation, to eliminate and/or reduce the hazards of exposure to benzene and benzene containing products;

e.      by failing to implement a proper safety program;

f.       by failing to train and instruct petitioner regarding the purpose, use, and limitations of the respiratory protective equipment;

g.      by failing to maintain, repair, replace and make available necessary respiratory protective equipment and/or the components thereof;

h.       by not using protective clothing for dermal exposure;

i.       by failing to monitor and/or evaluate the fume levels in the work environment to ensure that the plaintiff was not exposed to dangerous levels of benzene and benzene containing products;

j.      and other acts of negligence which may be revealed at the trial of this matter.

Furthermore, the Gulf Oil Executive Officers failed to warn the petitioner and concealed the dangers of benzene and benzene containing products in order to avoid litigation and costs associated with providing a safe work environment.

**Negligence**

38.

The Defendants, Radiator Specialty Co., ExxonMobil, and Chevron USA as successor to Gulf Oil and its executive officers,  breached duties owed to Mr. Boutain and his wife to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

a.  to design their products to contain available and suitable products other than benzene;

b.  to sell benzene-free products;

c.  to select materials other than benzene for inclusion into their products;

d.  to fully test their respective products for health risks associated with the normal and intended use of their products;

e.  to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended use;

f.  to fully warn foreseeable users and bystanders as additional medical knowledge became available concerning the health hazards associated with their products;

g.  to recall their products upon discovering, or at the time they should have discovered, the health hazards associated with those products;

h.  to inspect fully and adequately the design, selection, testing, instruction and warnings that should have accompanied the sale of such products;

i.  to refrain from negligently misrepresenting the safety and health risks of the products they sold;

j.  to inquire about or investigate the safety and health risks of the products they sold;

k.  to research, study and be aware of medical and scientific studies concerning the health hazards of benzene; and

l.  other acts which may be revealed at the trial of this matter.

39.

As a direct and proximate result of the Defendants' negligent breach of their duties, the Plaintiffs have sustained injuries, damages and losses. The scope of the duties breached by the

defendants encompasses the risk of the injuries sustained by the Plaintiffs.  The duties breached were intended to protect the Plaintiffs from the type of injuries they have sustained.   The Defendants' breaches of their duties constitute the direct legal cause of the injuries to the Plaintiffs. The Defendants are thus jointly and solidarily liable for all damages caused by their breaches.

<b>Strict Product Liability</b>

40.

Exposure to benzene from the Defendants' products and/or products under their care, custody and control resulted from the normal, foreseeable, and intended use of the products, without substantial change in the condition in which the defendants sold or supplied these products. Defendants are strictly liable for the damages caused by their products.

41.

The Defendants' products were defective, presented an unreasonable risk of harm, and were unreasonably dangerous under normal use at the time the products left the respective Defendants' control.

42.

Mr. Boutain was an intended and foreseeable user of the alleged defective products. Defendants could reasonably have anticipated the damages and losses to the Plaintiffs.

43.

The defects in the Defendants' products and equipment include, but are not limited to, the following:

   a.  The products were unreasonably dangerous per se in that the damage in fact of using the product outweighs the utility of the product under normal, foreseeable use.

   b.   The products are unreasonably dangerous per se because the cost of injuries as a result of the benzene content of the products, outweighed the benefits of use of benzene in the product.

   c.   The product was unreasonably dangerous in construction and design;

   d.   inherent characteristics (known to the defendants) that gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;

   e.   lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have been anticipated being used;

   f.   lack of warnings or lack of sufficient instructions for eliminating the health risks inherent in the use of the products;

   g.   lack of sufficient inspections by the Defendants of their products to ensure that such products contained sufficient warnings of the dangerous properties of the products;

   h.   lack of reasonable inspections by the defendants of their products to ensure that such products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the products;

   i.   lack of tests or lack of sufficient tests to determine the effect of benzene vapors on intended users and bystanders;

   j.   defective designs calling for the inclusion of benzene in products that did not require benzene, when alternative, equally suitable substances were available, and

   k.   other acts which may be revealed at the trial of this matter.

44.

Defendants sold their products with conscious disregard for the safety of users of the products and other persons who might be injured thereby.

45.

As a result of the defective and unreasonably dangerous condition and composition of the benzene-containing products manufactured, distributed and/or sold by all defendants, Mr. Boutain inhaled benzene fumes and other harmful substances emitted by the normal use of the products, proximately causing multiple myeloma related to benzene exposure from which he suffers and for which these defendants are strictly liable under Louisiana law.

**Strict Product Liability, Failure to Warn and Negligence for Radiator Specialty Co. and its Product Liquid Wrench**

46.

Radiator Specialty Company's Liquid Wrench is strictly liable for the damages caused by its products because its products were (1) Unreasonably dangerous per se; 2) Unreasonably dangerous in construction; 3) Unreasonably dangerous in design; and 4) Unreasonably dangerous due to a failure to warn. *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La. 02/24/86).

47.

Radiator Specialty Co. ("RSC") negligently produced and sold Liquid Wrench containing benzene. RSC knew or should have known that its raffinate formula Liquid Wrench contained a minimum of 4.45% benzene, and created a hazard of inhalation and dermal absorptions of benzene.

48.

RSC knew or should have known of the health risks from exposure to its benzene containing Liquid Wrench, such as blood disorders and blood cancers, including Leukemia.

**Former Article 2317 Liability**

49.

Mr. Boutain's CLL was caused by an unreasonably defective thing that was within the defendants' care, custody or control, namely, benzene and benzene-containing products. Since Mr. Boutain suffered his benzene exposures while former Article 2317 of Louisiana Civil Code was still in effect, it governs here. It provided:

"We are responsible, not only for the damages occasioned by our own act. but for that which is caused by the act of persons for whom we

are answerable, or of the things which we have in our custody . . ."

In interpreting this Article the Louisiana Supreme Court in *Loescher v. Parr* determined that when harm results from a defect in a thing that creates an unreasonable risk of harm to others, the person legally responsible for the custody of that thing may be held liable for the resulting damages, even though no personal negligent act or inattention on the person's part is proved. This liability arises from the person's legal relationship to the thing that presents an unreasonable risk of harm to others. Under former Article 2317, a plaintiff must prove:

   a.    The thing in question was defective, which means that it posed an unreasonable risk of harm;

   b.    It was in the garde (i-e., care, custody or control) of the defendant, and

   c.    The plaintiff was damaged as a result of the defect.

50.

When Mr. Boutain was exposed to benzene or benzene-containing products of Gulf Oil and Exxon, the defendants had control because they stored, supplied, manufactured, distributed and sold the benzene and benzene containing products at the facilities where Mr. Boutain was exposed.

**Compensatory Damages**

51.

As a result of the acts and omissions of the Defendants, the Plaintiffs are entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages include but are not limited to:

   a.  Past, present, and future physical pain and suffering;

b.  Past, present, and future mental anguish and emotional distress;

c.  Disfigurement and embarrassment;

d.  Physical impairment;

e.  Past and future earnings;

f.  Lost earning capacity;

g.  Physical Impairment;

h.  Physical and mental disabilities;

i.  Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

j.  Loss of enjoyment of life;

k.  Fear of cancer and other diseases;

l.  Expenses to train, educate or otherwise enable the plaintiffs to be gainfully employed;

m.  Loss of society, consortium, companionship, services, nurture, and love and affection;

n.  Wrongful death damages; and

o.  Survival damages.

**Jury Trial**

52.

The plaintiffs pray for trial by jury.

**Discovery Rule**

53.

The prescriptive period does not start until the plaintiffs knew or should have known that the plaintiff's CLL was caused by benzene. Here, the results of the plaintiff's exposure to benzene was inherently undiscoverable. The cancer took years to develop.

54.

Mrs. Boutain did not learn of his diagnosis of CLL until September 2010, and did not learn of a possible connection between the benzene he was exposed to and his illness until several months later.  Mr. Boutain filed suit within less than one year of learning that his CLL was caused by his exposure to benzene   The limitation period didn't start until after September of 2010, when the plaintiff learned about the cause of his CLL.

## Concealment, Misrepresentation, Fraud

### 55.

The Defendants, Radiator Specialty Co., Chevron USA as successor to Gulf Oil and its executive officers, and ExxonMobil, were aware of the dangerous condition presented by exposure to benzene, and that Mr. Boutain would suffer from benzene-related diseases and other ill health effects associated therewith as a result of this exposure.  Defendants failed and/or willfully withheld knowledge of the health dangers from exposure to benzene. Under Louisiana law fraud may be either active or passive. Passive fraud may arise from a defendant's silence or failure to act. To state a claim for passive fraud, Louisiana courts generally require a showing of the following elements: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information. *See Chrysler Credit Corp. v. Whitney Nat'l Bank,* 824 F.Supp. 587, 598 (ED. La. 1993). In support of their fraud claims against each of the defendants, the plaintiffs would respectfully show as follows:

**56.**

Mr. Boutain worked a the Gulf Oil Alliance Refinery. During this time Gulf Oil and its executive officers engaged in fraud by withholding important safety information from Mr. Boutain. Specifically, Gulf Oil and its executive officers failed to inform Mr. Boutain of the health risks associated with benzene exposure. Gulf Oil and its executive officers failed to inform. Mr. Boutain that the work he was assigned to perform at the Reliance Refinery caused him to be exposed to toxic levels of benzene. Gulf Oil and its executive officers failed to inform Mr. Boutain of the need to wear safety equipment and respiratory protection while performing his work. Finally, Gulf Oil and its executive officers failed to inform Mr. Boutain that the piping, equipment, process lines, valves, and chemicals that he was working with or around contained benzene or that fugitive emissions of benzene were present at the facility.

**57.**

The fraudulent activity giving rise to Mr. Boutain's cause of action against Gulf Oil  and its executive officers occurred during the following time periods: 1970 through 1976.

**58.**

Mr. Boutain performed work on the premises of Gulf Oil at the request of and for the benefit of Gulf Oil and its executive officers. As the premises owner and operators, Gulf Oil and its executive officers, had a duty to warn employees of hazards on its premises. Gulf Oil and its executive officers also had the duty to take reasonable actions to prevent injury to employees  in

invitees performing work on its premises.

**59.**

The fraud, concealment, and misrepresentations committed by Gulf Oil  and its executive officers benefited Gulf Oil and its executive officers by getting employees like Mr. Boutain to perform dangerous work for the defendant which Mr. Boutain would have refused to perform had he known of the dangers of the work. Additionally, Gulf Oil  and its executive officers did not have to go to the expense or endure the delay associated with the safety precautions that should have been utilized to perform Mr. Boutain's work.

**60.**

Radiator Specialty Co. failed to disclose the known health risks of exposure to benzene containing products, including:

- Failed to warn of the risk of dermal absorption of benzene;
- Failed to warn of the risk of developing blood disorders and blood cancers (including leukemia) from inflation and dermal exposure to their benzene containing products.

**61.**

Defendants were aware of the unreasonably dangerous nature of benzene and products containing benzene long before 1948 but, never warned Mr. Boutain about the health hazards associated with benzene. In fact, the defendants deliberately concealed this information from Mr. Boutain. As a result of suppressions of this information, Gulf Oil  and its executive officers sought to prevent or limit claims by persons injured.

**62.**

The acts of the Defendants, as described above, constituted misrepresentations and/or concealment, which proximately caused the injuries and damages to Mr. Boutain.

**Prayer**

**63.**

For these reasons, the plaintiffs ask that Chevron USA, Inc. (formerly Gulf Oil Corp.), Exxon Mobil Corp., Radiator Specialty Co., Oil Insurance, Ltd., and Insco, Ltd. (as insurers of Gulf Oil's Executive Officers) be cited to appear and answer, and that on final trial, the plaintiffs have:

a.  Judgment against Chevron USA, Inc. (formerly Gulf Oil Corp.), Exxon Mobil Corp., Radiator Specialty Co., Oil Insurance, Ltd., and Insco, Ltd  for any and all damages and the actual and special damages suffered by the plaintiffs as a result of Defendant's conduct;

b.  Costs of suit;

c.  Prejudgment and post-judgment interest at the highest rate provided by law; and

d.  All other and further relief to which the plaintiffs may be entitled.

Respectfully Submitted:

/s/ L. Eric Williams, Jr.
 L. Eric Williams, Jr. (La. Bar No. 26773)
**Williams Law Office, LLC**

433 Metairie Road, Ste. 404
Metairie, Louisiana  70005
Telephone:  (504) 832-9898
Facsimile:   (504) 832-9811

&

*s/ Amber E. Cisney*
RICHARD J. FERNANDEZ, LSBN 05532
AMBER E. CISNEY, LSBN 28821
**RICHARD J. FERNANDEZ, LLC**
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana  70002
Telephone: (504) 834-8500
Facsimile: (504) 834-2609
**ATTORNEYS FOR PLAINTIFF**


**Please Serve:**

**Radiator Specialty Co.**
Through its registered agent
Ronald Weiner
600 Radiator Rd.,
Indian Trail, NC 28079

**Chevron USA, Inc.**
Through its Registered Agent
The Prentice-Hall Corporation Systems, Inc.
320 Somerulos St.
Baton Rouge, Louisiana 70802

**Exxon Mobil Oil Corp.**
Through its agent for Service of Process
Corporation Service Co.
320 Somerulous St.
Baton Rouge, LA 70802

**Oil Insurance, Ltd.**
Louisiana Secretary of State
Legal Services Section
Post Office Box 94125
Baton Rouge, LA 70804-9125

**Insco, Ltd.**

Louisiana Secretary of State
Legal Services Section
Post Office Box 94125
Baton Rouge, LA 70804-9125